IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

TAMMY L. HEBURN,

                                        Plaintiff,

        vs.                                            Civil Action No.
                                                       6:05-CV-1429 (LEK/DEP)

MICHAEL J. ASTRUE, Commissioner
of Social Security,[1]

                                        Defendant.

_____

APPEARANCES:                            OF COUNSEL:

FOR PLAINTIFF:

ANTONOWICZ LAW FIRM                     PETER W. ANTONOWICZ, ESQ.
1300 Floyd Avenue
Rome, NY 13440-4600

FOR DEFENDANT:

HON. ANDREW BAXTER                      WILLIAM H. PEASE, ESQ.
Acting United States Attorney           Assistant United States Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

_____

        [1]     Plaintiff's complaint, which was filed on November 16, 2005, named Jo
Anne B. Barnhart, the former Commissioner of Social Security, as the defendant.  On
February 12, 2007, Michael J. Astrue took office as Social Security Commissioner.  He
has therefore been substituted as the named defendant in this matter pursuant to Rule
25(d) of the Federal Rules of Civil Procedure, and no further action is required in order
to effectuate this change.  *See* 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Tammy L. Heburn, who suffers from various diagnosed physical and mental conditions including fibromyalgia, cervical and lumbar spine injuries, shoulder arthritis, hypothyroidism, and depression, has commenced this proceeding pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Commissioner's denial of her application – the seventh filed in the nine years preceding the agency's decision in this matter – seeking supplemental security income ("SSI") benefits under the Social Security Act.  In her appeal, plaintiff asserts that the lynchpin determination of the administrative law judge ("ALJ") assigned by the agency to hear and determine the matter, to the effect that she was not disabled at the relevant times, is not supported by substantial evidence in the record and overlooks contrary opinions of her treating physicians as well as her statements concerning the limitations which she experiences as a result of her conditions.  Plaintiff further maintains that the ALJ erroneously determined that she retains the requisite residual functional capacity ("RFC") to perform work available in the national and regional economies.

Having carefully reviewed the record in light of the plaintiff's arguments, I find that the ALJ's determination of no disability resulted from the application of proper legal principles, and is supported by substantial evidence.

## I.   BACKGROUND

Plaintiff was born in 1960; at the time of the administrative hearing in this matter she was forty-four years old.  Administrative Transcript at pp. 40, 295, 298.[2]  Plaintiff is not married and lives in a mobile home in Rome, New York with her daughter, who was eleven years old at the time of the administrative hearing in this matter.  AT 40-41, 298.  Plaintiff left school after completing either the ninth or tenth grade, although she later received a general equivalency diploma ("GED").  AT 61, 298.

Available information regarding plaintiff's work history is somewhat vague.  According to her hearing testimony, plaintiff last worked in 1992.[3] AT 299.  Prior to that time, Heburn was employed for approximately five years in various diverse positions, including as a waitress, cashier, food

---

[2]     Portions of the administrative transcript, filed by the Commissioner and consisting of a compilation of evidence and proceedings before the agency, Dkt. No. 6, will be cited hereinafter as "AT ___."

[3]     Plaintiff testified that she worked for two days in 1999 as a ticket taker at Woodstock, but found the job both boring and at the same time somewhat stressful. AT 299, 329.

server, day care worker, school bus monitor, and certified nurse's aide. AT 56, 65, 299, 302-05.

Plaintiff has received treatment for her physical conditions from several sources. Dr. R. J. Mutty treated plaintiff's left and right shoulder pain in 1995, and later in 2002. AT 104-06. Plaintiff was also evaluated and treated for various conditions, including fibromyalgia, headaches, hypothyroidism, and back pain by Dr. Mustansir Majeed and doctors at the Rome Memorial Hospital, the Sitrin Medical Rehabilitation Center, and the Slocum-Dickson Medical Group. AT 84, 86-103, 170-83, 189-229, 273-79, 287-92. Plaintiff has additionally been referred to various specialists, including Dr. Martin Morell, a rheumatologist who diagnosed the plaintiff as suffering from chronic pain and fibromyalgia with fatigue and recommended physical therapy and medications, and Dr. Ahmed Shatla, a neurologist, to address her chronic headaches, for which Topmax and Zomig were prescribed. AT 189-200, 219-229, 287.

Despite having been seen by several care providers, including specialists, plaintiff's physical conditions have been treated fairly conservatively over time, including through use of such medications as Flexeril, Daypro, Motrin, Pamelor, Naproxen, Celebrex, Depakote, Vistaril, Synthroid, Zomig, Topamax, Zanaflex, Ultracet, Skelaxin, and Elavil. *See*

4

AT 84, 87, 91-92, 97, 109, 117, 126-28, 131, 171, 174, 176, 220-26, 273-75, 286, 289-90.  Plaintiff has also undergone physical therapy, including between March 7, 2002 and June 5, 2003.  AT 189-218.  At the time Heburn was discharged from physical therapy she described her pain as having decreased to a level of three or less on a scale of ten.  AT 189. Surgery for plaintiff's conditions has not been recommended, although she has twice received Decadron and Lidocaine injections in her shoulders. *See* AT 105-06.

In addition to her physical conditions, plaintiff has also sought treatment for mental health issues with staff at Mental Health Connections from June 2001 until April 2004, complaining of being overwhelmed and stressed by a combination of circumstances including her medical history and pain.  AT 107-69, 269-72, 282-86.  Plaintiff has been diagnosed as suffering from a mood disorder, substance dependence in remission, personality disorder, and depression, and has been prescribed medications such as Prozac and Zoloft.  AT 83, 97, 107, 109, 117, 126-29, 131, 134, 138, 141, 165, 176, 269-71, 273-75, 286, 290.

The administrative transcript in this case contains not only records from her treating sources, but additionally reports of consultative physical and mental examinations of the plaintiff.  On June 6, 2003, Dr. Kalyani

Ganesh conducted an internal medicine consultative examination of Heburn.  AT 240-43.  Based upon his examination and the plaintiff's account of her daily activities, Dr. Ganesh diagnosed her as suffering from fibromyalgia, arthritis of the back and shoulders, hypothyroidism, headaches, and depression, but nonetheless opined that she does not suffer any gross limitations in sitting, walking, standing, climbing, or bending, and is only mildly limited in her ability to lift, carry, push, and pull as a result of those conditions.  AT 242-43.

Plaintiff was also examined and evaluated by consultants to discern any limitations associated with her mental conditions.  Plaintiff underwent an intelligence evaluation on June 6, 2003 by Jeanne A. Shapiro, Ph.D. AT 230-34.  Dr. Shapiro found that plaintiff's overall functioning was in the borderline range of intelligence.  AT 232.  Plaintiff was also psychiatrically evaluated the same day by Dr. Shapiro.  AT 235-39.  In a report of that examination, Dr. Shapiro noted that plaintiff's speech was intelligible and clear, thought processes were coherent and goal-directed, affect was flat, mood was neutral, attention and concentration as well as memory skills were intact, and insight and judgment were fair.  AT 237-38.  Dr. Shapiro opined that vocationally, plaintiff appears capable of following, understanding, and remembering simple instructions and directions;

performing simple and many complex tasks with supervision and independently; maintaining attention and concentration for tasks; regularly attending to a routine; maintaining a schedule if she has transportation; making some appropriate decisions; learning some new tasks; relating to and interacting appropriately with others; and dealing with a moderate amount of stress.  AT 238.  In her report, Dr. Shapiro noted her diagnosis that the plaintiff suffers from bipolar disorder NOS and a history of alcohol, cocaine, and cannabis dependence in full remission.  *Id.*  Dr. Shapiro further noted in her opinion that plaintiff's psychiatric problems would not significantly interfere with her ability to function on a daily basis, since the symptoms of her conditions were mild and transient in nature.  *Id.*

On June 19, 2003, Dr. T. Guenther, Ph.D. completed a psychiatric review technique form regarding the plaintiff.  AT 255-67.  In it, Dr. Guenther noted that the plaintiff suffers from determinable impairments that do not fit the diagnostic criteria of any listed, presumptively disabling mental impairment including borderline intellectual functioning, mood disorder NOS; major affective disorder, depression; personality disorder NOS; and polysubstance dependence in early full remission.  AT 256, 258, 262-63.  Dr. Guenther also concluded that plaintiff is mildly restricted in activities of daily living and has mild difficulty in maintaining social

relationships, and exhibits moderate deficiencies in maintaining

concentration, persistence, or pace, but with no repeated episodes of

deterioration.  AT 265.  The same day, Dr. Guenther completed a mental

RFC assessment of plaintiff's condition.  AT 245-48.  Dr. Guenther

examined twenty categories of mental functioning, finding that of those

twenty, plaintiff has moderate limitations in seven, but that she is not

significantly limited in any other categories.  AT 245-46.

II.    PROCEEDINGS BEFORE THE AGENCY

Plaintiff filed an application for SSI benefits on April 22, 2003,

asserting a disability onset date of August 1, 1995.  AT 40-42.  Following

the denial of the application, AT 26-29, a hearing was conducted on June

2, 2004 at plaintiff's request, by ALJ William Lissner to address plaintiff's

claim for benefits.  *See* AT 295-339.  ALJ Lissner subsequently issued a

written decision, dated August 20, 2004, concluding that the plaintiff was

not disabled at the relevant times, and thus was not entitled to receive SSI

benefits.[4]  AT 13-24.

_____

        [4]      Although plaintiff's application alleged that she has been disabled since
August 1995, the ALJ properly accorded *res judicata* effect to a prior ALJ's decision
denying her application for SSI benefits, which was rendered on August 27, 2002 and
upheld following the denial of plaintiff's application for review of that determination by
the Social Security Administration Appeals Council.  *See* AT 13.  In light of that
determination and the fact that a disabled individual may not receive SSI payments
prior to the filing of an application for such benefits, *see* 20 C.F.R. § 416.335, the

Based upon his *de novo* review of the record, and applying the now familiar five part sequential test for determining disability, ALJ Lissner concluded at step one that plaintiff had not engaged in substantial gainful activity since her alleged disability onset date.  AT 23.  At steps two and three of the disability algorithm, the ALJ concluded that plaintiff's fibromyalgia, osteoarthritis of the lumbar spine, degenerative changes of the left shoulder, hypothyroidism, obesity, bipolar disorder, borderline intellectual functioning, and headaches were impairments of sufficient severity to significantly restrict her ability to perform basic work activities, but that they did not meet or equal any of the listed, presumptively disabling impairments set forth in the governing regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1.  AT 23.  When addressing plaintiff's various conditions and corresponding limitations, the ALJ surveyed portions of the record relating to plaintiff's "admitted history of drug and alcohol abuse", but accepted her assertion that the condition is in remission, and thus concluded that her substance abuse does not cause her to suffer any functional limitations of significance.  AT 19-20.

_____

relevant period of inquiry regarding disability extends from April 22, 2003, the date plaintiff filed her current application for SSI benefits, until August 20, 2004, the date of the ALJ's decision.  *Tejada v. Apfel*, 167 F.3d 770, 773 n.1 (2d Cir. 1999); *Jones v. Califano*, 576 F.2d 12, 14 (2d Cir. 1978).

Before proceeding to step four of the sequential analysis, ALJ Lissner next determined that despite the limitations imposed by her medical conditions, plaintiff retains the RFC to perform a significant range of medium work,[5] including the ability to lift and carry up to fifty pounds occasionally and twenty-five pounds frequently; to sit, stand, and walk for six hours in an eight-hour workday; to understand, remember, and carry out simple instructions; to maintain attention and concentration; to meet work attendance standards; to make appropriate decisions; to learn new tasks; to interact appropriately with others; and to tolerate a moderate amount of stress.  AT 22-23.  In making that determination, ALJ Lissner relied upon medical evidence in the record, including reports generated by treating and evaluating physicians, and rejected plaintiff's subjective testimony, to the extent that it was inconsistent with that finding, as not wholly credible.  AT 21-22, 23.

Applying his RFC finding at step four of the disability analysis, ALJ

---

[5]     The governing regulations define medium work as follows:

> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. § 416.967(c).

Lissner determined that he could not assess whether Heburn is able to perform any of her past relevant work, since plaintiff's work history did not reveal the existence of any positions held by her for a sufficiently significant period as to qualify as past relevant work.  AT 22.  Turning to step five, and acknowledging the shifting of burdens to the Commissioner, the ALJ concluded, in reliance upon the medical vocational guidelines (the "grid") set forth in the governing regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 2, as a framework, that Rule 203.28 directed a finding of "not disabled."  AT 22, 24.  ALJ Lissner therefore denied plaintiff's application for SSI benefits.  AT 24.  ALJ Lissner's opinion became a final determination of the agency on August 17, 2005, when the Social Security Administration Appeals Council denied Heburn's request for review of that decision.  AT 4-6.

### B.   This Action

Plaintiff commenced this action on November 16, 2005.  Dkt. No. 1.  Issue was thereafter joined on March 9, 2006 by the Commissioner's filing of an answer, accompanied by an administrative transcript of the proceedings and evidence before the agency.  Dkt. Nos. 5, 6.  With the filing of plaintiff's brief on August 1, 2006, Dkt. No. 9, and that on behalf of the Commissioner on January 4, 2007, Dkt. No. 12, the matter is now ripe

for determination and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(1)(B) and Northern District of New York Local Rule 72.3(d).[6]  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

    A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Veino v. Barnhart,* 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir. 1987)).   Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion

---

[6]      This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and subsequently amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

reached is arguably supported by substantial evidence.  *Martone*, 70 F.

Supp. 2d at 148 (citing *Johnson*, 817 F.2d at 986).  If, however, the

correct legal standards have been applied and the ALJ's findings are

supported by substantial evidence, those findings are conclusive, and the

decision should withstand judicial scrutiny regardless of whether the

reviewing court might have reached a contrary result if acting as the trier

of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d

Cir. 1988); *Barnett v. Apfel*, 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998)

(Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

    The term "substantial evidence" has been defined as "'such relevant

evidence as a reasonable mind might accept as adequate to support a

conclusion.'"  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420,

1427 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197,

229, 59 S. Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184

(2d Cir. 2003).  To be substantial, there must be "'more than a mere

scintilla'" of evidence scattered throughout the administrative record.

*Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427 (quoting *Consolidated*

*Edison Co.*, 308 U.S. at 229, 59 S. Ct. at 217); *Martone*, 70 F. Supp. 2d at

148 (quoting *Richardson*).  "To determine on appeal whether an ALJ's

findings are supported by substantial evidence, a reviewing court

considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *Parker*, 626 F.2d at

14

235; *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d Cir.

1992); *Carroll v. Sec'y of Health and Human Servs.,* 705 F.2d 638, 644

(2d Cir. 1983).

  B. <u>Disability Determination - The Five Step Evaluation Process</u>

  The Social Security Act defines "disability" to include the "inability to

engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months . . . ."  42 U.S.C. §

423(d)(1)(A).   In addition, the Act requires that a claimant's

> physical or mental impairment or impairments
> [must be] of such severity that he is not only
> unable to do his previous work but cannot,
> considering his age, education, and work
> experience, engage in any other kind of substantial
> gainful work which exists in the national economy,
> regardless of whether such work exists in the
> immediate area in which he lives, or whether a
> specific job vacancy exists for him, or whether he
> would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

  The agency has prescribed a five step evaluative process to be

employed in determining whether an individual is disabled.  *See* 20 C.F.R.

§§ 404.1520, 416.920.  The first step requires a determination of whether

the claimant is engaging in substantial gainful activity; if so, then the

claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§

404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then

the second step involves an examination of whether the claimant has a

severe impairment or combination of impairments which significantly

restricts his or her physical or mental ability to perform basic work

activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer

from such an impairment, the agency must next determine whether it

meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.*

§§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so,

then the claimant is "presumptively disabled".  *Martone*, 70 F. Supp. 2d at

149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20

C.F.R. §§ 404.1520(d), 416.920(d).

     If the claimant is not presumptively disabled, step four requires an

assessment of whether the claimant's RFC precludes the performance of

his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If it is

determined that it does, then as a final matter the agency must examine

whether the claimant can do any other work.  *Id.* §§ 404.1520(g),

416.920(g).

     The burden of showing that the claimant cannot perform past work

lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it

becomes incumbent upon the agency to prove that the claimant is capable

of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that

burden has been met, the ALJ should consider the claimant's RFC, age,

education, past work experience, and transferability of skills.  *Ferraris*, 728

F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

     C.    <u>The Evidence In This Case</u>

     The ALJ's conclusion of no disability hinges upon his findings

regarding the limitations imposed by plaintiff's physical and mental

conditions and resulting RFC determination.  In support of her challenge

to the Commissioner's determination, plaintiff argues that in arriving at his

RFC determination ALJ Lissner improperly rejected the opinion of her

treating psychiatrist, Dr. Lawrence Farago; his associate, Clinical Social

Worker ("CSW") Nancy Phillips; and her treating physician, Dr. Martin

Morell, and instead relied upon the contrary conclusions of state agency

medical consultants.  Plaintiff further contends that the RFC determination

is not supported by substantial evidence in the record.

     A claimant's RFC represents a finding of the range of tasks he or

she is capable of performing notwithstanding the impairments at issue.  20

C.F.R. § 416.945(a).  An RFC determination is informed by consideration of a claimant's physical abilities; mental abilities; symptomology, including pain; and other limitations which could interfere with work activities on a regular and continuing basis.  *Id.*; *Martone*, 70 F. Supp. 2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push, and pull.  20 C.F.R. §§ 416.945(b), 416.969a. Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered. 20 C.F.R. §§ 416.945(b), 416.969a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).  When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice.  *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris,* 728 F.2d at 587). An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations.  *Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997).

In support of her challenge to the ALJ's RFC determination, plaintiff

assails both the physical and mental components.  Examining first the physical components, it should be noted that nowhere in the record is there evidence contradicting the finding that plaintiff is capable of lifting up to fifty pounds occasionally and twenty-five pounds frequently.  During the hearing, plaintiff was neither asked to assess her capacity to lift, nor did she volunteer that information.

As a counterweight to this lack of evidence contradicting the ALJ's RFC finding, the record contains a physical RFC assessment form signed by a disability analyst which supports the ALJ's conclusion.  AT 249-53.  The determination also draws support from the findings of Dr. Ganesh who, notwithstanding his diagnoses that plaintiff suffers from fibromyalgia, nonetheless opined that plaintiff has only a mild degree of limitation and lifting, carrying, pushing, and pulling, with no gross limitation noted in sitting, standing, walking, climbing, or bending.  AT 243.  Similarly, the ALJ's finding is not contradicted by Dr. Morell, to whom plaintiff was referred for consideration of her fibromyalgia.  Dr. Morell has never rendered an opinion regarding plaintiff's lifting capacity, but did prescribe physical therapy; upon her discharge from physical therapy in June of 2003, plaintiff described her level of pain as a three or less on a scale of ten.  *See* AT 189-90.  This, in combination with consideration of plaintiff's

statement regarding her daily activities, supports the ALJ's findings,

whose inferences and conclusions must be affirmed if supported by

substantial evidence.[7]  *See, e.g., Shetron v. Comm'r of Soc. Sec.*, No. 05-

CV-280, 2008 WL 388 4353, at *6-7 (N.D.N.Y. Aug. 19, 2008) (Scullin,

S.J. and Homer, M.J.).

It is true that in her hearing testimony plaintiff refutes claims of her

ability to sit, stand, and walk to the extent determined by the ALJ.  The

ALJ rejected that assertion as not entirely credible, however, based upon

the inconsistency of her testimony as to how long she could sit, stand and

walk during an eight hour period, and as in conflict with her conservative

course of treatment and significant daily activities.  AT 21.  The ALJ's

credibility determination, which was properly explained, is entitled to

deference provided that there is substantial evidence to support the

underlying RFC determination.  *Sweatman v. Callahan*, No. 96-CV-1966,

1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler J. and Smith M.J.)

(citing *Marcus v. Califano*, 615 F. 2d 23, 27-28 (2d Cir. 1979)).  In this

---

[7]      The court notes that the ALJ's findings for plaintiff's capacity to perform medium work are not necessarily dispositive, since application of the grid to a light work determination, which would reduce the lifting component to twenty pounds occasionally and ten pounds frequently with all other factors remaining equal, would similarly direct a finding of not disabled.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.20.

instance, the RFC determination regarding plaintiff's ability to sit, stand, and walk is well supported by the record, including the result of a consultative examination by Dr. Ganesh, and is not specifically contradicted by any medical evidence in the record.

The principal focus of plaintiff's challenge to the ALJ's RFC determination appears to relate to the mental component and the resulting non-exertional limitations from which she claims to suffer.  Plaintiff asserts, *inter alia*, that the ALJ's RFC determination ignores the contrary opinions of Dr. Lawrence Farago, M.D.  It is true that ordinarily, the opinion of a treating physician is entitled to considerable deference, provided that it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.  *Veino*, 312 F.3d at 588; *Barnett*, 13 F. Supp. 2d at 316.[8]  Such opinions are not controlling, however, if contrary to other

---

[8]     The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions
> from your treating sources . . . If we find that a
> treating source's opinion on the issue(s) of the
> nature and severity of your impairment(s) is
> well-supported by medically acceptable
> clinical and laboratory diagnostic techniques
> and is not inconsistent with the other
> substantial evidence in your case record, we
> will give it controlling weight.   When we do
> not give the treating source's opinion

substantial evidence in the record, including the opinions of other medical experts. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino*, 312 F.3d at 588. Where conflicts arise in the form of contradictory medical evidence, their resolution is properly entrusted to the Commissioner. *Veino*, 312 F.3d at 588.

In deciding what weight, if any, an ALJ should accord to medical opinions, he or she may consider a variety of factors including "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof[.]" *See Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527, 416.927).

When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection. 20 C.F.R. § 416.927(d)(2). Failure to apply the appropriate legal standards for considering a treating physician's opinions is a proper basis for reversal and remand, as is the failure to provide reasons for the rejection of his or her opinions. *Johnson*, 817

---

controlling weight, we apply [various factors] in determining the weight to give the opinion.

20 C.F.R. § 416.927(d)(2).

F.2d at 985-86; *Barnett*, 13 F. Supp. 2d at 316-17.

The only psychiatric assessment set forth in the record bearing Dr. Farago's signature is a report completed on October 22, 2003.  AT 185. In that report, Dr. Farago wrote that the plaintiff suffers from depression NOS, and recorded his prognosis as fair to guarded.  *Id.*  In that report, Dr. Farago noted the prescription of various medications, including Zoloft and Depakote, and wrote that treatment had resulted in "symptom minimization."  *Id.*

The assessment form upon which plaintiff now places heavy reliance, also prepared on October 22, 2003, was actually signed by CSW Phillips and does not bear Dr. Farago's signature or any other signs of his endorsement.  AT 186-88.  As a licensed clinical social worker, the opinions of Ms. Phillips are not entitled to treating source deference.[9]  *See Pennay v. Astrue*, No. 3:05-CV-673, 2007 WL 5465987, at *5 n.4 (N.D.N.Y. Aug. 3, 2007) (citing, *inter alia*, *Mongeur v. Heckler*, 722 F.2d

---

[9]      It is unclear whether either CSW Phillips or Dr. Farago could appropriately be regarded as a treating source in this matter.  In order to qualify as a treating source a professional must have developed a treatment relationship with a patient over a significant period of time.  *See Mongeur*, 722 F.2d at 1039 n.2.  In this instance Dr. Farago's report, dated October 22, 2003, notes that his first treatment of the plaintiff occurred on June 4, 2003 and that his last treatment followed on August 20, 2003, with no indication that there were any other visits between those two dates. A relationship of such brief duration and frequency in all likelihood does not qualify Dr. Farago as a treating source.  *Id.*

1033, 1039 n.2 (2d Cir. 1983)).

This is not to say that the findings of CSW Phillips are not entitled to some consideration.  *See Marziliano v. Sullivan*, 771 F. Supp. 69, 75 (S.D.N.Y. 1991).  In her report, Ms. Phillips notes plaintiff exhibits poor use of judgment, and poor ability to interact with supervisors, to deal with work stress, and to maintain attention and concentration.  AT 186.  Ms. Phillips also notes that plaintiff scores poorly in the ability to understand, remember, and carry out either detailed or complex job instructions, and has poor demonstrated reliability.  AT 187.  Ms. Phillips noted, on the other hand, that plaintiff has a good ability to relate to co-workers, to deal with the public, and to maintain personal appearance, and a fair ability to follow work rules; to function independently; to understand, remember, and carry out simple job instructions; to behave in an emotionally stable manner; and to relate predictably in social situations.  AT 186-87.  In his determination, the ALJ carefully reviewed that assessment and properly accorded it some limited weight.  AT 21-22.

While some of CSW Phillip's findings are congruent with those reported by Dr. Shapiro, following her consultative psychiatric examination, others are contradicted by the recorded conclusions of Dr. Shapiro, who opined that plaintiff is capable of following, understanding

and remembering simple instructions and directions; can perform simple,

and many complex, tasks with supervision and independently; appears

capable of maintaining attention and concentration for tasks and regularly

attending to a routine and maintaining a schedule, provided that she has

transportation; appears capable of making some appropriate decisions,

and learning some new tasks; appears able to relate to, and interact

appropriately, with others; and is capable of handling a moderate amount

of stress.  AT 233.  Dr. Shapiro also concluded that while plaintiff reports a

diagnoses of bipolar disorder, her symptoms were determined to be both

mild and transient, and that while she functions in the borderline range of

intelligence she should be able to work in an appropriate setting.  AT 233-

34.  In her report, a good prognosis was offered by Dr. Shapiro.  *Id*.

Similar findings were reported by Dr. Shapiro in her psychiatric

consultation.  AT 235-39.  The findings of Dr. Shapiro, as an agency

consultant, can provide substantial evidence to support an ALJ's

determination.  *Pennay*, 2007 WL 5465987, at *7 (citing *Barringer v.

Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) (Sharpe,

J.)).

     The ALJ's determination, in addition to drawing support from Dr.

Shapiro's findings, is also fairly consistent with the psychiatric review

technique form and mental RFC assessment completed by a non-

examining state agency consultant, Dr. Guenther.  *See* AT 255-267.

Noting that he had reviewed both records of the plaintiff's treating

physician's assistant and psychological assessments, and considered

plaintiff's assertions that she is able to attend to her personal care, cook,

clean, do laundry, shop, manage money and take public transportation as

well as to care for her daughter, Dr. Guenther concluded that

notwithstanding her psychiatric symptoms plaintiff is able to follow and

understand directions, sustain and maintain pace, adequately relate to

others, and deal with changes effectively.  AT 247.  Dr. Guenther also

concluded that plaintiff is only mildly restricted in her activities of daily

living and in maintaining social relationships, although he found moderate

deficiencies in the areas of  maintaining concentration, persistence, or

pace.  AT 265.  Dr. Guenther further concluded that plaintiff is only

moderately limited in her ability to understand, remember and carry out

detailed instructions; to maintain attention and concentration for extended

periods; to accept instructions and respond appropriately to criticism from

supervisors; to respond appropriately to changes in the work setting; to

set realistic goals or make plans independently of others; and to complete

a normal workday and work week without interruptions from

psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods.  AT 245-46. While not entirely duplicative of the conclusions of Dr. Shapiro, Dr. Guenther's assessment nonetheless is consistent with a finding that plaintiff is capable of performing unskilled work.  *See* Social Securing Ruling ("SSR") 85-15, 1985 WL 56857, at *4, *Titles II and XVI: Capability to Do Other Work – The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments* (S.S.A. 1985).

In sum, I conclude that the ALJ's finding of no disability, including his pivotal RFC finding, is supported by substantial evidence.  In making that determination, the court is cognizant of the nature of one of plaintiff's diagnosed conditions, fibromyalgia, and the ability of such a condition to evade determination with precision.[10]  Addressing that diagnosed

---

[10]   Fibromyalgia is described by a leading medical source as:

> [a] syndrome of chronic pain of musculoskeletal origin but uncertain cause.  The American College of Rheumatology has established diagnostic criteria that include pain on both sides of the body, both above and below the waist, as well as in an axial distribution (cervical, thoracic, or lumbar spine or anterior chest); additionally there must be point tenderness in at least 11 of 18 specified sites.

STEDMANS MEDICAL DICTIONARY (27th ed. 2000).  Fibromyalgia is also commonly referred to as fibrositis.  *Green-Younger v. Barnhart*, 335 F.3d 99, 101 n.1 (2d Cir. 2003).

condition, the Second Circuit has noted that "fibromyalgia is a disabling

impairment" which "eludes . . . measurement" through objective medical

evidence because there are "no objective tests which can conclusively

confirm the disease."  *Green-Younger*, 335 F.3d at 108 (citations omitted);

*see also Lisa*, 940 F.2d at 44-45.  As the Second Circuit aptly observed,

> [i]n stark contrast to the unremitting pain of which
> fibrositis patients complain, physical examinations
> will usually yield normal results – a full range of
> motion, no joint swelling, as well as normal muscle
> strength and neurological reactions. There are no
> objective tests which can conclusively confirm the
> disease; rather, it is a process of diagnosis by
> exclusion and testing of certain "focal tender
> points" on the body for acute tenderness which is
> characteristic in fibrositis patients.

*Lisa*, 940 F.2d at 45 (citation omitted); *see also* THE MERCK MANUAL 321-

22 (Merck Research Labs. 18th ed. 2006) (noting that fibromyalgia is

recognized by certain "typical" symptoms and through exclusion of other

diseases).  Nonetheless, in this case the medical evidence in the record

regarding plaintiff's condition, including reports from her treating

rheumatologist, reveal that plaintiff's condition is both mild and well

controlled, and does not appear to result in the extensive physical

limitations which she now claims.  Under the circumstances, I conclude

that the record provides substantial evidence supporting the ALJ's

determination regarding the extent of limitations associated with plaintiff's physical and mental conditions, and that the ALJ's RFC findings resulting in a determination of no disability should be affirmed.

IV.    SUMMARY AND RECOMMENDATION

In arriving at his determination of no disability, the ALJ properly determined that plaintiff's testimony concerning her limitations was not fully credible, and determined, based upon the evidence in the record, including reports from consultative evaluations, that plaintiff is capable of performing the exertional requirements of medium work, and additionally, notwithstanding her mental conditions, she is able to understand, remember, and carry out simple instructions; maintain attention and concentration; meet work attendance standards; make appropriate decisions; learn new tasks; interact appropriately with others; and tolerate a moderate amount of stress.  Applying that RFC finding, utilizing the grid as a framework, the ALJ also appropriately concluded that a finding of no disability is warranted.  Having found that the ALJ's RFC determination draws the support of substantial evidence, it is hereby respectfully

RECOMMENDED that defendant's motion for judgment on the pleadings be GRANTED, the Commissioner's determination of no disability be AFFIRMED, and plaintiff's complaint in this matter be

DISMISSED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the clerk of the court within ten (10) days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1) (2006); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

IT IS FURTHER ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      December 30, 2008
            Syracuse, NY

30